IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ADRIENNE A.**[1],

      **Plaintiff,**

                                        Civil Action 2:23-cv-1928
                                        Judge Sarah D. Morrison
                                        Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Adrienne A., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits ("DIB").  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiff's Reply (ECF No. 12), and the administrative record (ECF No. 7).  The Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors (ECF No. 9) and **AFFIRM** the Commissioner's decision.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

1

I.   BACKGROUND

Plaintiff previously applied for DIB on June 25, 2019, alleging that she has been disabled since April 11, 2019, due to PTSD, anxiety, Bi-polar Disorder, Plantars Fibromytosis, chronic migraines, and heel spurs. (R. at 229-35, 260.) Plaintiff's application was denied initially in October 2019 and upon reconsideration in March 2020. (R. at 146-58, 160-68.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 186-202.) On October 6, 2020, Plaintiff, who was represented by counsel, appeared and testified at a hearing held by an administrative law judge. (R. at 79-110.) On November 24, 2020, Francine A. Serafin ("ALJ Serafin") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 61-78.) The Appeals Council denied Plaintiff's request for review, and she filed suit in this Court. *See* [*Adrienne A.*] *v. Comm'r of Soc. Sec.*, S.D. Ohio Case No. 2:21-cv-2650. Upon a joint motion by the parties, this Court remanded the matter for further proceedings. (R. 1057-1060.)

On remand, the claim was returned to ALJ Serafin. After a hearing on September 8, 2022, ALJ Serafin found on March 17, 2023, that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. (R. at 975-1005.) Plaintiff did not request review by the Appeals Council opting to directly file suit with this Court. This matter is properly before this Court for review.

II.   RELEVANT RECORD EVIDENCE

The Undersigned has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports and testimony as to her

2

conditions and resulting limitations. Given the claimed errors raised by the Plaintiff, rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III. ADMINISTRATIVE DECISION

On March 17, 2023, the ALJ issued her decision. (R. at 975-1005.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024. (R. at 981.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 11, 2019, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the following severe impairments: primary osteoarthritis of right knee, migraine disorder, diabetes mellitus, carpal tunnel syndrome, post-traumatic stress

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can [Plaintiff] perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

disorder, bipolar disorder, and anxiety disorder. (R. at 982.) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: She can frequently climb ramps, stairs, ladders, ropes, and scaffolds. She can frequently balance and stoop. She can occasionally kneel, crouch, and crawl. She can frequently handle, finger, and feel with the bilateral upper extremities. She is limited to work environment without constant excessive noise level as that term is used in the Selected Characteristics of Occupations (SCO). She can perform simple and complex tasks, but in a low stress work environment that does not involve an assembly line or production rate pace or any strict production quotas. She is capable of managing 3 to 4 changes per workday or work shift. She is capable of handling frequent interactions with supervisors but only occasional, superficial contact with coworkers and the public.

(R. at 986.)

At step four of the sequential process, the ALJ determined that Plaintiff is capable of performing her past relevant work as an electronics assembler as this work does not require the performance of work-related activities precluded by her RFC. (R. at 997-98.) The ALJ made an alternate finding at step five, relying on the VE's testimony, and concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy, such as a storage facilities rental clerk, an office helper, or a mail clerk. (R. at 999.) The ALJ therefore concluded that Plaintiff has not been disabled since April 11, 2019. (*Id.*)

IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of

a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff raises one issue in her Statement of Errors: the ALJ's RFC determination is not supported by substantial evidence because the ALJ omitted work preclusive limitations. Plaintiff attacks the RFC determination as to its exclusion of both certain physical and mental limitations. Specifically, Plaintiff argues that the ALJ erred by omitting a sit/stand option and by failing to limit the degree of her interaction with supervisors to superficial. In reply, Plaintiff slightly refines her argument to state that the ALJ failed to properly explain her basis for omitting the work preclusive limitations as opined by agency experts. For the following reasons, the Undersigned disagrees and finds that the ALJ's RFC formulation is supported by substantial evidence.

As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can still do despite her limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your

6

medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 404.1513(a)(4). "Medical opinion" is defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions. . . .
>
> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes. . . . 20 C.F.R. § 404.1513(a)(2).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c. These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to

7

claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. § 404.1520c(b)(2). If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. § 404.1520c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how she evaluated each opinion or finding individually but must instead articulate how she considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. § 404.1520c (b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 404.1520c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more

> persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

### A. Sit/Stand Option

The Court turns first to the issue of the ALJ's decision to omit a sit/stand option from the RFC. Plaintiff's argument rests on the opinion evidence of Drs. Michael Hallett and Diane Manos, the state medical consultants at the initial and reconsideration levels, respectively. The ALJ had this to say in discussing those opinions:

> The [ALJ] finds the medical opinions of Michael Hallet, M.D. (see Ex. 2A) and Diane Manos, M.D. (*see* Ex. 4A), the state medical consultants at the initial and reconsideration levels respectively, to be persuasive as to the overall limitation to work within the light exertional range and the additional limitations to frequent climbing of ramps and stairs, to frequent balancing and stooping, and to occasional kneeling and crouching. These portions of their opinions are consistent with the medical evidence of record as discussed above (*see supra*). Additionally, they were adequately supported. Although no clear analytical narrative was provided, the

9

evidence summaries in the Disability Determination Explanations (DDEs) note findings such as degenerative changes in the knees, an elevated BMI, and findings of knee tenderness, which adequately support a such limitations. However, their opinions regarding the need for a sit/stand option (i.e., alternating sit/stand every 30 minutes for up to 10 minutes) and the degree of limitation in crawling and climbing of ladders, ropes, or scaffolds, as well as the absence of manipulative and environmental restrictions, are unpersuasive.

Notably, their opined sit/stand option was reasonably consistent with the records available at the time of their review, including findings of an antalgic gait at times (*see, e.g.*, Ex. 5F, 69; Ex. 8F, 16), and was supported by their discussion of these findings (*see, e.g.*, Ex. 2A, 4; Ex. 4A, 2-3) and reference to the potential for pain with prolonged standing (*See* Ex. 2A, 8; 4A, 5). However, these opinions note that this limitation is secondary to [Plaintiff]'s plantar foot disease (*see* Ex. 2A, 8; 4A, 5) and the record did not yet include substantial evidence following [Plaintiff]'s surgery for this condition in November 2019. As discussed above, [Plaintiff] substantially improved following this surgery and prior to one year after the alleged onset date (*see supra*). For example, treatment notes in March 2020 state that her gait was only slightly antalgic and otherwise quite stable (*see* Ex. 8F, 4). As such, this restriction was not supported for an adequate duration to be included in the residual functional capacity assessment.

Regarding postural limitations, Dr. Hallett and Dr. [Manos][3] opined that [Plaintiff] would be limited to only occasional climbing of ladders, ropes, and scaffold; however, they failed to provide adequate support for this limitation. Unlike their opinion regarding a sit/stand option, they did not cite a condition or rationale for this restriction (*see* Ex. 2A, 7-9; Ex. 4A, 5-6), and although some remarkable examination findings are noted within a summary of evidence (*see* Ex. 2A, 4; Ex. 4A, 2-3), there is no clear logical analysis directly indicative of this degree of limitation. Furthermore, this opinion is also not consistent with the medical evidence of record, which, within a year of the alleged onset date, demonstrates no more than a slightly antalgic gait (*see* Ex. 8F, 4) as well as normal extremity strength (*see, e.g.*, Ex. 8F, 4, 7). Therefore, a limitation to frequent climbing of ladders, ropes, and scaffolds is more appropriate. In contrast, they opined that [Plaintiff] would be capable of frequent crawling but given the degenerative changes in [Plaintiff]'s knee (*see* Ex 4F, 21) and findings of knee tenderness (see, e.g., Ex. 6F, 24), [Plaintiff] should be further restricted to only occasional performance. It should also be noted that they opined that [Plaintiff] would be further restricted to in kneeling and crouching, which are less stressful on the joints

---

[3] The ALJ's opinion appears to inadvertently refer to Dr. Manos as "Dr. Walker" in this and the following paragraph.

10

> than crawling would be. In this way, these opinions are somewhat internally inconsistent.
>
> Finally, Dr. Hallett and Dr. [Manos] did not opine to any environmental limitations; however, given [Plaintiff]'s history of migraine headaches, a limitation to a work environment without constant excessive noise level is warranted. Notably, neither the initial nor the reconsideration DDEs include a diagnosis of migraines in the listed medically determinable impairments, even as nonsevere (*See* Ex. 2A, 5; Ex. 4A, 3-4). As the record, even at the time of the state consultants' reviews, clearly demonstrates a severe medically determinable impairment of migraines, their opinions are not consistent with the medical evidence of record. Furthermore, the absence of acknowledgement of migraines and any related limitations is not adequately supported, as, despite noting evidence of this condition in the record, there is no discussion why this condition was ignored. Lastly, these consultants did not opine to any manipulative limitations, which are warranted by the record based on [Plaintiff]'s carpal tunnel syndrome; however, as this condition was not present at the time of their review, it is reasonable that no limitations would be assessed.

(R. at 994-995.)

Earlier in her decision, the ALJ had concluded that Plaintiff's medically plantar fascia fibromatosis was a medically determinable but non-severe impairment because it did not cause a significant limitation in Plaintiff's ability to perform basic work activities or satisfy the durational requirement to establish disability. (R. at 982.) In reaching this conclusion, the ALJ cited Plaintiff's records from Southeastern Ohio Regional Medical Center documenting Plaintiff's surgery in November 2019. (*Id*. citing R. at 575.) The ALJ also cited Plaintiff's testimony at the prior hearing that this surgery had corrected Plaintiff's plantar fascia fibromatosis problems. (*Id*. citing R. at 102.)[4] The hearing testimony, although not specifically quoted by the ALJ, is restated here as follows:

---

[4] The ALJ cited the previous hearing date as October 6, 2022. The correct date is October 6, 2020.

> Q  Ma'am, I just want to ask you, I know that you had a -- a surgical procedure performed on your feet to remove some of the fibromas that you've had, how have your feet been since that -- that was performed?
>
> A  My feet are fine now, thank goodness. It's one less thing. Yeah, my feet are good now.
>
> Q Okay.  Thank you for updating me on that.

(R. at 102.)

As the Court understands Plaintiff's argument on this issue, she claims that there is significant evidence in the record to support her continued need for a sit/stand option after her surgery in November 2019.  Plaintiff overstates.  For example, Plaintiff cites psychotherapy notes from August 27, 2020, but mischaracterizes them as demonstrating her mobility issues. More accurately, these notes reflect that, in the context of reporting migraine pain, Plaintiff reported that she attempts to walk her dog daily when she is able.  (R. at 126.)  Plaintiff similarly relies on a liberal interpretation of her medical records in asserting that continued pain from her plantar fascia fibromatosis is evident from the fact that she was taking more than twice the recommended dose of a muscle relaxant as late as June 2022.  (R. at 1286.)  In short, Plaintiff's citation to other evidence in the record is not compelling.  Moreover, even crediting Plaintiff's argument here, she "'does not establish a lack of substantial evidence by pointing to evidence of record that supports her position.  Rather, [she] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion.'" *McMullen v. Comm'r of Soc. Sec.*, No. 1:23-CV-00118-JPC, 2023 WL 8935234, at *14 (N.D. Ohio Dec. 11, 2023), *report and recommendation adopted*, No. 1:23-CV-00118, 2023

WL 8933246 (N.D. Ohio Dec. 27, 2023) (quoting *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010)). Plaintiff has not done so here.

Plaintiff 's additional arguments on this issue are equally unavailing. For example, Plaintiff contends that no medical opinions contradict the sit/stand limitation. It is well-established that an ALJ's RFC determination is not required to correspond to a particular medical opinion, and the absence of a medical opinion supporting that finding does not render the RFC finding invalid. *Eaton v. Comm'r of Soc. Sec.,* No. 1:20-CV-486, 2022 WL 109934, at *6 (W.D. Mich. Jan. 12, 2022) (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013)). Plaintiff also claims that the ALJ's reasoning is internally inconsistent. The focus of this argument is that Dr. Hallett reviewed the record before Plaintiff's surgery and Dr. Manos reviewed the record after the surgery, but they reached the same conclusion regarding the need for a sit/stand option. As Plaintiff sees it, the ALJ failed to explain how the opinion at the reconsideration level offered by Dr. Manos was both consistent with and supported by the record but also inconsistent with the evidence. As the excerpt above demonstrates, this argument simply ignores the plain reading of the ALJ's discussion. For these reasons, Plaintiff's claim of error relating to the exclusion of a sit/stand option from the RFC is without merit.

**B. Limitation to Superficial Interaction with Supervisors**

Plaintiff also contends that the ALJ erred by not including a mental health limitation in the RFC relating to superficial contact with supervisors. This argument relies, in part, on the opinions offered by Drs. Larry Kravitz and Kristen Haskins, the state psychological consultants

at the initial and reconsideration levels, respectively. The ALJ discussed those opinions in this way:

> *** Firstly, the undersigned notes that many of the terms and phrases used by Dr. Kravitz and Dr. Haskins do not have a clear enough definition to be of particular use (e.g., "static setting," "straightforward," "predictable"), which places a practical limit on their persuasiveness. Furthermore, these opinions are not adequately supported as both Dr. Kravitz and Dr. Haskin fail to cite to specific objective evidence to support the extent of their opined limitations. Additionally, substantial evidence, including the majority of [Plaintiff]'s mental health treatment records, where received subsequent to their review, which alone decreases the persuasive value of these opinions as the full and complete record was not reviewed.
>
> Moreover, their opinions are not consistent with the medical evidence of record. For example, both consultants opined that [Plaintiff] would be limited to only superficial interaction in the workplace (*see* Ex. 2A, 10; Ex. 4A, 7); however, although such a limitation is reasonable as to co-workers and the public, this is not consistent with the medical evidence of record, as it does not demonstrate a basis to extend this to supervisors. For example, records document pleasant and conversant behavior between [Plaintiff] and her providers, and no other documentation of observed hostility to authority figures (*See supra. See, e.g.*, Ex. 9F; Ex. 12F). Additionally, although the undersigned concurs that the record demonstrates/is consistent with a need to limit workplace changes, as opined to by both Dr. Kravitz and Dr. Haskins (see Ex. 2A, 9; Ex. 4A, 7), as well as work pace/quota demands, as further opined by Dr. Haskins (see Ex. 4A, 7), a limitation to only simple and detailed tasks not consistent with the available evidence. For example, objectively findings have not shown any significant abnormalities in areas such as fund of knowledge, thought processes, or memory (See *supra*).

(R. at 995-996.)

Plaintiff's argument on this issue further relies on the opinion of her primary care provider Billye Dailey, M.A. The ALJ discussed Ms. Dailey's opinion regarding Plaintiff's mental health functional limitations as follows:

> The [ALJ] finds the medical opinion of Billye Dailey, M.A. (see Ex. 11F), [Plaintiff]'s primary care provider, to be unpersuasive. As with Mr. Biedenbach's opinion, Ms. Dailey's opinion is disproportionately restrictive in comparison to the

> available medical evidence, including treatment records from her office, Allwell. As such, it is not consistent with the medical evidence of record. Furthermore, it is not adequately supported. For example, Ms. Dailey opined that [Plaintiff] would be "seriously limited" in her ability to maintain attention and concentration for two-hour segments; however, records from Allwell, where Ms. Dailey is an employee, evidence regularly findings of attention span and concentration within normal limits (See Ex. 9F; Ex. 12F).
>
> Additionally, Ms. Dailey does not cite to any objective findings to support the extent of her limitations. Rather, she cites only to subjective symptoms and/or symptom triggers, namely those regarding PTSD. Even these subjective symptoms are not supported by the record, including those of Ms. Dailey herself. For example, her treatment notes from May 2020, just three months prior to the date of her opinion, state that [Plaintiff] reported only minimal PTSD symptoms, which were of a short and manageable duration (See Ex. 12F, 13). Notably, in July 2020, just a month prior to Ms. Dailey's opinion, her treatment notes reflect that [Plaintiff] had maintained improvement of her mental health (See Ex. 12F, 19). Based on the foregoing and the record as a whole, this opinion is found to be unpersuasive.

(R. at 996.)

To be clear, as reflected above, the ALJ included a limitation to superficial contact, but that limitation related only to contact with coworkers and the public. Thus, Plaintiff's claimed error on this issue, that the ALJ did not include in the RFC a limitation to superficial contact with supervisors, is very discrete. The essence of Plaintiff's argument on this issue raises two points: (1) in concluding that the record did not document observed hostility to authority figures, the ALJ failed to note that, at one appointment with Ms. Dailey, Plaintiff "appeared highly agitated" and (2) other evidence in the record supports the conclusion that the superficial limitation should be extended to all interactions.

Plaintiff's first point, based solely on her own interpretation of one incident of record, does not contradict the ALJ's conclusion that the record fails to demonstrate Plaintiff's hostility to authority figures. The notes Plaintiff relies upon, while documenting Plaintiff's frustration,

15

indicate that Plaintiff was triggered by a "male driver in public transport" and the expected wait time for the appointment. (R. at 140.) These same notes further reflect Plaintiff's ability to communicate the basis of her frustration to Ms. Dailey and to reach an agreed resolution. Thus, these notes, read fairly, more accurately demonstrate Plaintiff's ability to communicate effectively with Ms. Dailey beyond a superficial level.

As for the remainder of Plaintiff's argument on this issue, it fails for the same reasons her argument relating to the need for a sit/stand option fails. That is, Plaintiff's argument relies on on her own liberal interpretation of her medical records. Again, however, even accepting Plaintiff's citation to allegedly contradictory evidence, she "'does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [she] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion.'" *McMullen,* 2023 WL 8935234, at *14. Once more, Plaintiff has failed to do so. For this reason, this portion of Plaintiff's claimed error also lacks merit.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 9) be **OVERRULED,** and that the Commissioner's decision be **AFFIRMED.**

**VII.     PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date:    May 16, 2024**                                         */s/ Elizabeth A. Preston Deavers*
                                                                                 **ELIZABETH A. PRESTON DEAVERS
                                                                                 UNITED STATES MAGISTRATE JUDGE**